IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **FIRST COMMAND FINANCIAL SERVICES, INC.,** | § | |
| **Petitioner,** | § | |
| **v.** | § | **Civil Action No. 4:15-cv-379-O** |
| **KIRK HOGAN BAUR,** | § | |
| **Respondent.** | § | |

**ORDER**

Before the Court are Petitioner's Motion for Preliminary Injunction and to Compel Arbitration and Brief and Appendix in Support (ECF Nos. 4–6), filed May 18, 2015; Respondent's Response and Appendix in Support (ECF Nos. 15–16), filed July 13, 2015; and Petitioner's Reply (ECF No. 18), filed July 20, 2015. Having considered the motion, related briefing, and applicable law, the Court finds that the motion should be and is hereby **GRANTED**.

## I. BACKGROUND

This is an arbitration dispute. First Command Financial Services, Inc. ("Services") seeks a preliminary injunction enjoining Kirk Hogan Baur ("Baur") from pursuing claims against Services before the Financial Industry Regulatory Authority ("FINRA") and compelling Baur instead to submit to arbitration before the American Arbitration Association ("AAA").

The parties agree that Baur entered into an Advisor Agreement ("Advisor Agreement") with Services and three of Services' subsidiaries, including First Command Financial Planning, Inc. ("Planning"). The Advisor Agreement provides that a dispute "[b]etween You [Baur] and FCFP

[Planning] shall proceed to binding arbitration under the FINRA Code of Arbitration Procedure (the "FINRA Rules") for Industry disputes." Services' App. Supp. Resp. Ex. 1 (Advisor Agreement) ¶ 14.2.1, App. 14, ECF No. 16-1. In the next paragraph, the Advisor Agreement provides that a dispute "[b]etween You [Baur] and FCFS [Services], FCIS or FCB [two other subsidiaries of Services] arising out of or relating to this Agreement shall be submitted to binding arbitration to the AAA." *Id.* ¶ 14.2.2, App. 15. It is undisputed that Baur and Planning agreed to submit industry disputes to FINRA arbitration and Planning is a member of FINRA. The parties contest whether Services may be compelled to arbitrate before FINRA in light of paragraph 14.2.2.

In addition to the Advisor Agreement, Baur and Services entered into a MAP Agreement ("MAP Agreement"), which incorporates the MAP Plan ("MAP Plan") by reference. *Id.* Ex. 3 (MAP Agreement), ECF No. 16-3. The MAP Plan includes a provision regarding the forfeiture of MAP Points and Options in the event that a participant violates the company's policy regarding non-competition or is separated for cause. *Id.* Ex. 2 (MAP Plan) Art. VI, App. 36, ECF No. 16-2. The MAP Plan also includes an agreement to arbitrate disputes about the interpretation and construction of the MAP Plan before the AAA. *Id.* Art. XI, App. 39. Planning was not a party to the MAP Agreement. *See id.* Ex. 3 (MAP Agreement), ECF No. 16-3.

On June 27, 2014, Planning terminated Baur for cause for violating a non-compete agreement, and Services later withheld deferred compensation that Baur earned pursuant to the MAP Plan on the same basis. Baur contests whether he violated the non-compete and whether he is entitled to the deferred compensation.

To resolve the dispute, Planning initiated an arbitration proceeding before FINRA. Baur then brought a claim against Services in the same proceeding. Responding to Services' objections, a panel

of FINRA arbitrators and the FINRA director separately denied Services' requests to separate its claims from Planning's claims.

According to Services, the dispute between Planning and Baur related to the non-compete agreement must be presented before FINRA, and the dispute between Services and Baur relating to the issue of MAP Points or deferred compensation must be presented before the AAA because Services has only consented to arbitration before the AAA.

According to Baur, the disputes between all the parties must be submitted before the FINRA. He argues that the claims involve business activities in the securities industry and therefore are all subject to mandatory arbitration before FINRA. "A securities firm cannot opt out of FINRA's exclusive jurisdiction by assigning to an affiliated non-member a right that arises out of the compensation of the advisor related to work he does for the member." Baur's Resp. 1, ECF No. 15. He concludes that any purported agreements between the parties to circumvent this provision cannot be enforced.

The motion has been fully briefed and is ripe for adjudication.

## II. LEGAL STANDARDS

### A. Preliminary Injunction

A district court may grant preliminary injunctive relief before deciding whether to compel arbitration. *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011). A preliminary injunction is an "extraordinary remedy" and only will be granted if the movant carries its burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The Court may issue a preliminary injunction if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the

movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *see also* Fed. R. Civ. P. 65. "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Id.*

**B. Arbitration Agreements**

"Supreme Court and Fifth Circuit jurisprudence has consistently held that the question of arbitrability is an issue undeniably reserved for judicial determination unless the parties clearly and unmistakably intend otherwise." *Pershing LLC v. Bevis*, No. CIV.A. 13-672-JJB, 2014 WL 644553, at *2 (M.D. La. Feb. 19, 2014) *aff'd sub nom. Pershing, LLC v. Bevis*, 606 F. App'x 754 (5th Cir. 2015).

The Federal Arbitration Act ("FAA") establishes national policies "favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). In determining whether parties should be compelled to arbitrate a dispute, the court conducts a two-step inquiry. *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (per curiam) (citing *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)). First, the court determines "whether there is a valid agreement to arbitrate between the parties" and "whether the dispute in question falls within the scope of that arbitration agreement." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). Arbitration is a matter of contract, and a party generally cannot be required to submit to arbitration any dispute that he has not agreed to submit. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of Am.*

*v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). In analyzing whether there is a valid agreement, courts apply state-law principles governing formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the court determines that an agreement to arbitrate exists, "the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc One*, 367 F.3d at 429. Second, "if the court finds that the parties agreed to arbitrate, it next determines whether any federal statute or policy renders the claims nonarbitrable." *Moran*, 239 F. App'x at 936 (citing *Bailey*, 364 F.3d at 264). Upon finding that a valid arbitration agreement exists and no policies or statutes preclude its enforcement, the court is required to compel arbitration and stay or dismiss its proceedings. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

### C. Equitable Estoppel

"[E]quitable-estoppel claims are matters of state contract law." *Pershing, LLC v. Bevis*, No. 14-30525, 2015 WL 1546391, at *1 (5th Cir. Apr. 8, 2015). One type of equitable estoppel is direct-benefit estoppel. According to the Fifth Circuit:

> Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract. A nonsignatory can "embrace" a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining "direct benefits" from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.

*Id.* at *2 (internal quotation marks omitted).

## III. ANALYSIS

Because the threshold question of whether a claim is arbitrable "is an issue undeniably reserved for judicial determination unless the parties clearly and unmistakably intend otherwise,"

and there is no evidence that the parties intended to reserve this threshold question of arbitrability for an arbitrator, the Court evaluates arbitrability without deference to FINRA's arbitrability determinations. *Pershing LLC v. Bevis*, 2014 WL 644553, at *2. Accordingly, in evaluating Services' motion to enjoin Baur from pursuing claims against Services in the pending FINRA arbitration, the Court turns to the first preliminary injunction element.

**A. Likelihood of Success on the Merits**

In order to obtain a preliminary injunction, Services must establish a likelihood of success on the merits. Specifically, Services must demonstrate a likelihood that the proper forum for arbitration of the dispute between Services and Baur is the AAA rather than FINRA.

As a general rule, a party may not be compelled to arbitrate without his agreement. *Pershing*, 2015 WL 1546391, at *2. Also, generally, parties are to be held to their agreements to arbitrate in a particular forum.

Here, there is no dispute that the parties agreed to arbitrate this matter. *See Banc One*, 367 F.3d at 428. The terms of both the Advisor Agreement and the MAP Plan indicate that disputes between Services and Baur are to be arbitrated before the AAA. *See* Advisor Agreement ¶ 14.2.2, App. 15, ECF No. 16-1; MAP Plan, Art. XI, App. 39, ECF No. 16-2. Additionally, Services contends that it is not a member of FINRA and has not consented to arbitrate there.[1] In light of the parties'

---

[1] The Court concludes that Services is not a FINRA member. In Baur's Response, he makes one reference that FINRA considers Planning and Services to be the same entity for regulatory purposes because the Broker Check Report for Planning lists Services under "Other Names of this Firm." Baur's Resp. 2, ECF No. 15; Baur's App. Supp. Resp. 249, ECF No. 16-5. However, for the remainder of Baur's argument, Baur refers to Planning as a "member" as defined by FINRA Rule 13100, and he refers to Services as an "affiliate of a FINRA member." Baur's Resp. 5–6, ECF No. 15. His estoppel argument is premised upon this fact. Moreover, Services presents evidence that FINRA considers Planning and Services to be separate entities. Services' Reply 2, ECF No. 18; Services' App. Supp. Mot. Ex. 7 (FINRA Letter), App. 127, ECF No. 6 ("Since you [Services] have not signed an agreement to arbitrate, your submission to arbitration must be

express agreement to arbitrate before the AAA and Services' lack of consent to proceed in the FINRA arbitration, the Court concludes that Services has made out a prima facie case that it is subject to arbitration before the AAA rather than FINRA. Therefore, unless there is an exception to the general rule such that the agreement to arbitrate in the AAA is invalid, Services may not be compelled to arbitrate in FINRA.

Baur presents two related arguments arguing that there should be an exception here: (1) direct-benefit estoppel and (2) non-waivable mandatory FINRA arbitration. According to Baur, because Services is an affiliate of FINRA-member Planning and because the claim against Services is related to Planning and Baur's Advisor Agreement, Services also must submit to FINRA arbitration. *See* Baur's Resp. 5, ECF No. 15.

1. Equitable Estoppel

Baur invokes the equitable estoppel principle of direct-benefit estoppel. "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Pershing*, 2015 WL 1546391, at *2.

Services argues that direct-benefit estoppel theories necessarily involve non-signatories and that Services is a signatory to the Arbitration Agreement. Here, Baur, Services, and three of Services' subsidiaries signed the Arbitration Agreement, and Services seeks to invoke the plain meaning of the contract compelling arbitration between it and Baur before the AAA. Therefore, the Court finds that, at this stage, it is unlikely that direct-benefit estoppel theory would overcome the parties' agreement to arbitrate before the AAA.

---

voluntary.").

2. Mandatory FINRA Arbitration

It is undisputed that FINRA has exclusive jurisdiction over disputes arising out of business activities between FINRA members and associated persons, and a member cannot require an associated person to waive FINRA arbitration. *See Wanken v. Wanken*, No. 3-10-CV-0556-K-BD, 2011 WL 477440, at *1 n.1 (N.D. Tex. Jan. 12, 2011) (citing FINRA Manual R. 13200), *adopted*, No. 3:10-CV-0556-K, 2011 WL 477386 (N.D. Tex. Feb. 7, 2011), *aff'd*, 451 F. App'x 319 (5th Cir. 2011); *Thomas James Assocs., Inc. v. Jameson*, 102 F.3d 60, 66 (2d Cir. 1996) (holding in the context of FINRA's predecessor); *see also* Services' Br. Supp. Mot. 2 n.2, ECF No. 5. It is also undisputed that Planning is a member of FINRA.

Baur relies upon a New York state court opinion that held that "FINRA'[s] arbitration requirement is non-waivable and cannot be circumvented by simply substituting an affiliate as a party in an employment-related dispute." *Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698, 704 (Sup. Ct. 2010). Baur argues that this is an employment-related dispute and Services is an affiliated party of a member attempting to circumvent FINRA.

However, mere affiliation with a member of FINRA is not sufficient to compel a non-consenting party to submit to FINRA arbitration. *See Griffith v. Ameriprise Fin. Servs., Inc.*, No. 3:14-CV-04295-TLW, 2014 WL 7409538, at *3 (D.S.C. Dec. 31, 2014) (refusing to compel a non-FINRA-member parent company of a FINRA-member subsidiary to FINRA arbitration). Instead, *Merrill Lynch* was premised upon theories of estoppel and agency which made it equitable to compel a non-consenting party to arbitrate. *See Brashear v. Pelto*, 941 N.Y.S.2d 348, 349 (N.Y. App. Div. 3d 2012) ("Plaintiff's reliance on [*Merrill Lynch*] is misplaced in the absence of any relationship between Pelto and TD Ameritrade that would give rise to a finding of incorporation by reference,

assumption, agency, alter ego, or estoppel. The mere interrelated nature of plaintiff's claims against Pelto and TD Ameritrade is insufficient alone to subject Pelto to the arbitration agreement."). The Court has not been presented with any theory which would invalidate the parties' arbitration agreement. *See supra* Part III.A.1; *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015). Therefore, the holding in *Merill Lynch* does not require FINRA arbitration in this case.

### B. Threat of Irreparable Harm

Services argues that, absent a preliminary injunction enjoining Baur from proceeding against Services, it will be irreparably harmed. The Court concludes that here, being forced to arbitrate a dispute before the improper arbitrator would cause irreparable harm. *See Kellogg Brown & Root Servs., Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, No. CIV.A. H-07-2684, 2007 WL 4190795, at *16 (S.D. Tex. Nov. 21, 2007) ("In light of Fifth Circuit precedent establishing that a court cannot compel a party to arbitrate unless the court determines that the party agreed to arbitrate, [Plaintiff] has shown that it will suffer irreparable harm if it must arbitrate nonarbitrable disputes and seek redress later.").

### C. Balance of Hardships

Services argues that Baur will not be harmed by submitting the matter in dispute to the AAA arbitration, as he agreed to do. Baur argues that it would be more efficient to arbitrate the related matters in one arbitration proceeding, and, if Services' motion is granted, he would have to defend the same claims in two forums simultaneously. However, the Court must hold the parties to their agreements, and here, Baur agreed to arbitrate claims against different parties before different arbitrators.

### D. Public Interest

Services argues that the public's interest is in preserving the parties' right to be held to their contracts. Baur argues that Congress' intent in requiring FINRA arbitration of certain disputes furthers the public's interest in enforcing a comprehensive securities regulatory scheme. However, at this stage, Baur has not shown that Services is improperly shifting compensation obligations to a non-FINRA member in order to avoid FINRA. Accordingly, the public interest weighs in favor of holding parties to their valid arbitration agreements.

Therefore, as all of the preliminary injunction elements are satisfied, the Court finds that Services' motion to enjoin Baur from pursuing claims against Services in the pending FINRA arbitration is **GRANTED**.

### E. Motion to Compel

The Court next turns to Services' motion to compel Baur to arbitrate in the AAA. Having concluded that plain terms of the Advisor Agreement and the MAP Plan indicate that disputes between Services and Baur are to be arbitrated before the AAA, and finding Baur's estoppel arguments unpersuasive, the Court concludes that the AAA is the proper arbitration forum for disputes between Baur and Services. *See* Advisor Agreement ¶ 14.2.2, App. 15, ECF No. 16-1; MAP Plan, Art. XI, App. 39, ECF No. 16-2. Upon finding that a valid arbitration agreement exists and no policies or statutes preclude its enforcement, the court is required to compel arbitration and stay or dismiss its proceedings. *See Alford*, 975 F.2d at 1164. Therefore, the Court finds that Services' motion to compel Baur to arbitrate disputes with Services is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion for Preliminary Injunction and to Compel

Arbitration (ECF No. 4) is **GRANTED**. Accordingly, it is **ORDERED** that Baur is enjoined from pursing claims against Services in the pending FINRA arbitration, styled *First Command Financial Planning, Inc. v. Baur*, FINRA Case No. 14-02163. It is **FURTHER ORDERED** that Baur is compelled to arbitrate disputes with Services in the AAA arbitration, styled *First Command Financial Services, Inc. v. Baur*, AAA Arbitration No. 01-15-0002-5970. The action in this Court is hereby **DISMISSED** without prejudice.

**SO ORDERED** on this **7th day** of **August, 2015**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE